IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WENDY PETERSON, Individually and As Next Friend of JONATHON PETERSON, a minor<br><br>Plaintiffs,<br><br>v.<br><br>AMBER BAKER, EDDIE MOSLEY, TRUDY SOWAR, PAULDING COUNTY BOARD OF EDUCATION and PAULDING COUNTY SCHOOL DISTRICT,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:04 -CV- 3308-GET |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT EDDIE MOSLEY'S MOTION FOR SUMMARY JUDGMENT

COME NOW WENDY PETERSON and JONATHON PETERSON, Plaintiffs in the above-styled action, and submit this Reply Brief in Opposition to Defendant Eddie Mosley's Motion for Summary Judgment stating as follows:

### I.

### FACTS

Eddie Mosley was the principal of Herschel Jones Middle School. On

February 5, 2004, Mosley had been the Principal of Herschel Jones Middle School since the beginning of the school year. The 2003/2004 school year began on August 11, 2003.

During this first week of school, Mosley had already begun receiving complaints from parents of students who were assigned to Baker's remedial reading class. In a Memorandum of Concern dated August 15, 2004, written by Mosley and provided to Baker, Mosley identified three concerns he had on her stemming from reports from parents in Baker's class. (Mosley Deposition at 80-84; Exhibit C). The first concern was that Baker was requiring her students to purchase an additional book, which violated school policy. (Id. at 80).

The second concern was that Baker had humiliated a student, Jacob Queen, by making him stand with his finger on his nose. (Id. at 81; Exhibits C, H). Jacob had told his parents that although he had spoken out of turn in Baker's class before, he was not doing so prior to receiving this punishment. (Exhibit H). Not only did Jacob Queen's mother find this punitive measure humiliating, but Mosley also considered this public humiliation which was inappropriate discipline and a demonstration of poor judgment by Baker. (Mosley at 81).

This third concern involved Baker's decision to punish several tardy students by making them write sentences about making excuses. (Id. at 82; Exhibit C). Mosley

considered this behavior inappropriate as well. (Id. at 82).

In another Memorandum of Concern, dated September 4, 2003, Mosley identified four concerns regarding Baker's performance and conduct (Id. at 85; Exhibit D): (1) Baker had failed to attend mandatory Student Support Team (SST) meetings (Id. at 85; Exhibit D); (2) Baker failed to provide communication logs memorializing contact with parents pursuant to school policy (Id. at 88-89; Exhibit D); (3) Baker's failure to create an appropriate classroom atmosphere; and (4) Baker's failure to perform her assigned duties (Exhibit D).

Some of the specific concerns Mosley addressed in this September 4, 2003 Memo were that Baker referred to her students as "Stupid" and was physically placing her face in the faces of the students while making disparaging remarks to them. (Mosley at 91, 92, 93; Exhibit D). Mosley had also been made aware that Baker had told a student "You have no I.Q." and to "Shut your chubby cheeks." (Id. at 94; Exhibit D). Mosley was aware at this time that Baker was demonstrating poor judgment and inappropriate discipline.

In addition to the specific instances Mosley addressed in his Memos, he testified that he had received complaints from parents and/or students that Baker was not reacting calmly to discipline issues, had allowed her students to wander around during class, would argue with her students, and was embarrassing the students in

front of their peers. (Id. at 97, 98). Mosley also received complaints from parents and/or students that Baker was not reacting calmly to discipline problems. (Id. at 98). Mosley testified that what happened often with respect to Baker was that she would conduct herself inappropriately towards a student, and then several students would report Baker's conduct to their parents, who would then contact Mosley expressing their concerns about their children's teacher. (Id. at 90-91).

Within the first two months of school, Mosley had been made aware that Baker's conduct in the classroom was inappropriate. (Id. at 93). Mosley was aware that Baker had not gone through the traditional training program, and he had concerns about this because he believed the traditional training was necessary to prepare teachers to be effective on the job. (Id. at 69). Despite this inappropriate behavior, he failed to do anything more than document these concerns, and Baker disputes that she even received the Memorandums. (Baker at 77-97).

On October 7, 2003, Baker lost her temper at a student and kicked a door, breaking the glass window in the door. (Mosley at 29:12-23). Mosley conducted an investigation of this incident, including interviewing several student witnesses, it was apparent to him that Baker had lost her temper and directed Baker to pay for the broken glass. (Id. 30:4-7; 108; 110). Mosley reported this incident to Dr. Bill McCown. (Id. at 141). This incident raised red flags to Mosley that Baker had an

anger management problem. (Id. 30-31).

After this incident of October 7, 2003, Mosley requested that Sharon Moore, an instructional lead teacher, work with Baker and observe her in the classroom. (Id. p. 31:8-16). Mosley also asked Shelia Thompson, Baker's TAPP mentor, to observe Baker in the classroom. (Id.). The first observation of Baker, however, was not conducted until November 24, 2003, almost two months later. (Id at 39:9-17).

Mosley was provided with an observation report dated December 9, 2003, indicating that Baker left her classroom unsupervised. (Id. at 48-54). This same observation report noted that Baker interacted with her students in a sarcastic manner. (Id. at 54-55). In this same report, it was noted that Baker's "student interactions are characterized by put-downs." (Id. at 59). Mosley considered Baker's behavior inappropriate. (Id. at 55, 60).

In a Memorandum of Concern dated October 17, 2003, in addition to addressing Baker's loss of control and subsequently breaking the window, Mosley advised Baker that on October 13, 2003, he had received a telephone call from Philip Todd's mother that Baker told her students that she did not care what they did because she would still receive her paycheck. (Id. at 113-114; Exhibits E and J). Mrs. Todd also informed Mosley that her son felt very intimidated by Baker and is afraid of how he will be treated by her if her actions were reported. (Exhibit J). This

conversation with Mrs. Todd indicated to Mosley that Baker had a problem with anger and with controlling her temper. (Id. at 116-117).

Also as is evident in the October 17th Memo, Mosley was contacted via telephone by Sheila Craton, student Lacy Argo's grandmother, pertaining to a conversation Craton had with Baker where Baker became irate and told Craton that she had "had it with her" and that she was not a baby sitter. (Id. at 114; Exhibit K). During the conversation with Craton, Mosley prepared a conversation log documenting the purpose of Craton's call. (Exhibit K). Baker had put Lacy in the hall, had picked on Lacy, and told her "if you hit her, I will hit you." Baker's comment was in response to an argument Lacy was having with another student. (Exhibit K). This conversation with Craton further confirmed Mosley's belief that Baker had a problem controlling her temper, responding inappropriately to situations, and demonstrated a poor sense of judgment. (Mosley at 116).

In this October 17th Memo, Mosley expressed concern about Baker's ability to control her classroom. (Id. at 124). Mosley also had concerns about Baker's threat of using physical violence against the students. (Id. at 124). As of October 17th, Mosley had determined that Baker's anger was an issue. (Id. at 139).

Despite Mosley's preparation of numerous Memorandums of Concern citing numerous instances of inappropriate conduct and acts of physical violence by Baker,

he did not conduct any personal meetings with Baker to address her conduct. (Id. at 161-163). There is no documentation memorializing any observations Mosley may have done of Baker in her classroom. (Id. at 163).

Finally, on February 3, 2004, Baker's conduct escalated beyond control and she physically assaulted one of her eighth-grad students, Jonathon Peterson. Peterson arrived late to Baker's class with another student, Willie Landers. (Id. at 19:24-20:2). Landers was upset over something and Peterson and Landers were talking in class when Baker told them both to get up and get out and take a walk. (Id. at 22:22-25; 23:9-11).

Once Peterson got to the door, Baker told him to sit back down. (Id. at 23:19-23). By this time, Baker had already permitted Landers to leave the classroom. (Id. at 31:22-23). Peterson did not sit back down because he wanted to leave to go to the office. (Id. at 24:14). As Baker was shaking her finger in Peterson's face, she was yelling at him that she "hated him," that she "Didn't want him in her classroom in the first place." (Exhibit 112, ¶ 3). Peterson wanted to go to the office because Baker was yelling, shaking her finger in his face and embarrassing him in font of the entire class. (Peterson at 106:9-15).

When Peterson attempted to leave the classroom Baker physically prevented him from leaving by placing her arm across the doorway. (Id. at 25:8-10). At this

time, Peterson moved her hand off the door so he could leave. (Id. at 25:12; 25:15-16). As Peterson attempted to leave, Baker grabbed him by the neck with her right hand. (Id. at 25:20-22). Baker squeezed Peterson's neck so hard to the point that he was starting not to be able to breathe. (Id. at 98:3-8). Baker squeezed Peterson's neck to the point that he was experiencing pain. (Id. at 98:9-11). Baker squeezed Peterson's neck to the point that it took him a while to catch his breath. (Id. at 98-14). Baker used enough force when she had her hand around Peterson's neck that red and blue bruises were visible on his throat. (Mosley at 201:8-19; Exhibit A).

Once Peterson was able to get away from Baker, he told her, "You fucking bitch, don't ever put your hands on me again." (Peterson at 34:20-21). Peterson was upset and crying so he went outside to calm down and then went to the office. (Id. at 35:5-7). When Peterson arrived at the office, he was told that the Administrators had been advised of the incident. (Id. at 36:5). Peterson's mother was contacted, and when his mother arrived they went to the police station. (Id. at 38:10-25). At the police station, Peterson filled out a report and photographs of the injuries to his neck were taken. (Id. at 39:20-25; Exhibit A). The Officer who prepared the report noted on the police report that there was a red and blue bruise on Peterson's neck. (Exhibit A).

After Peterson and several eye witnesses were interviewed, Baker was placed

on paid administrative leave pending further investigation. (Exhibit A).

II.

## ARGUMENT AND CITATION OF AUTHORITY

A.  **Defendant Mosley's Failure To Provide A Statement Of Material Facts As Required By LR 56.1(B)(1) Precludes His Ability To Obtain Summary Adjudication As He Has Not Demonstrated To The Court That There Is A Lack Of Factual Support To Maintain Plaintiffs' Claim Against Him And He Is Unable To Pierce The Plaintiffs' Pleadings.**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c); *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004). Summary Judgment may be granted when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." See *Nolan v. Boca Raton Cmty. Hosp., Inc.*, 737 F.3d 1151, 1154 (11th Cir. 2004). All issues of material fact are resolved in favor of the Plaintiff (the non-moving party), and it is under this version of facts that the legal question of whether the defendant is entitled to summary judgment is asked. *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).

In the present Motion, Defendant Mosley failed to provide the Court with a

Statement of Material Facts pursuant to LR 56.1(B)(1). Furthermore, the Local Rule specifically states that the introductory portion of a brief does <u>not</u> constitute a statement of material facts. As such, Plaintiffs' Statement of Material Facts should be considered the Undisputed Facts for this Motion and under these undisputed facts Defendant Mosley is not entitled to summary judgment.

**B.    There Exists A Causal Connection Between Baker's Actions Of Lashing Out At Jonathon Peterson And Mosley's Failure To Remove Baker From The Classroom After Receiving Numerous Complaints Involving Baker's Inability To Control Her Anger And Classroom Since The First Week Of School Until The Incident Subject Of This Lawsuit.**

"Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official might be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences" ***Hartley v. Parnell***, 193 F.3d 1263 (11th Cir. 1999); ***Braddy v. Florida Dept. of Labor & Employment Sec.***, 133

F.3d 797, 801 *citing* **Brown v. Crawford**, 906 F.2d 667, 671 (11th Cir. 1990).

In the present matter, there is no evidence that Mosley participated in the incident that deprived Peterson of his constitutional rights, but there is significant evidence of Mosley's knowledge of prior inappropriate conduct by Baker that put him on notice that Baker might commit such a constitutional violation of physical abuse on another student. Mosley's failure to take corrective action after repeatedly being informed of Baker's inappropriate conduct towards her students and repeated display of anger management problems was his custom of dealing with (or not dealing with as the case is) her behavior. Shockingly, **Mosley testified that he would allow Baker's conduct to continue as long as he had to.** (Mosley at 153). Mosley had an affirmative duty to protect Peterson from Baker's actions and Mosley was deliberately indifferent to Peterson's rights in failing to correct and prevent Baker's abusive behavior despite receiving notice of numerous instances of inappropriate behavior by Baker towards her students.

Prior to the incident with Jonathon Peterson, Mosley had been repeatedly informed by different sources (students, parents, teachers) and had gathered information from his own interviews with students that Baker's conduct in the classroom was inappropriate, displayed her anger problem, and was increasing in severity.

As of August 15, 2003, at the end of the first week of school, Mosley was aware that Baker made a student, Jacob Queen, stand with his finger on his nose due to misbehavior in the classroom (Id. at 81; Exhibit C). Mosley considered this punishment a form of public humiliation, inappropriate discipline, and a demonstration of poor judgment by Baker. (Id. at 81).

As of September 4, 2003, less than one month after the start of school, Mosley was aware that (1) Baker failed to attend mandatory Student Support Team (SST) meetings (Id. at p. 85; Exhibit D); (2) Baker failed to follow Mosley's policy of providing communication logs memorializing conversations she had with her students' parents (Id. at p. 88; Exhibit D); (3) Baker referred to her students as "stupid" (Id. at p. 91; Exhibit D); (4) Baker had physically gotten in students' faces while making disparaging remarks to them (Id. at 92; Exhibit D); (5) Baker told a student to "Shut your chubby cheeks" (Id. at 94; Exhibit D); (6) Baker told a student "You have no I.Q." (Id. at 94; Exhibit D); (7) Baker had embarrassed students in front of their peers and argued with students (Id. at 97; Exhibit D). Mosley considered all of Baker's actions to be inappropriate and a demonstration of poor judgment. (Id. at pp. 93; 94; 95). Furthermore, Mosley testified that Baker's comments of "Shut your chubby cheeks" and "You have no I.Q." shocked his conscience. (Id. at p. 268).

As of October 7, 2003, it was apparent to Mosley that Baker had lost her

temper at a student and kicked the door so hard that the glass in the door window shattered. (Id. at p. 108; Exhibit E). Although Mosley "directed" Baker to pay for the damage, she never did. (Id. at; Exhibit E; Baker at 97). Mosley testified that the incident of October 7, 2003, when Baker broke the window, raised some red flags that Baker had an anger problem. (Mosley Deposition, pp. 30:25-31:2). Although Mosley asked two staff members to observe Baker after this October 7, 2003 incident, he did not follow up on these requests and no observations were made of Baker until November 24, 2003. (Id. at p. 39:9-17).

As of October 17, 2003, Mosley had received complaints from other teachers and staff members that (1) Baker raised her voice to her students (Id. at p. 105); (2) Baker still failed to attend the mandatory SST meetings and provide required progress reports (Exhibit E); (3) Baker had threatened to hit a student on the head with a marker (Id. at 112, Exhibit E); (4) Baker told students she did not care what they said because she would still receive her paycheck (Id. at 113-114; Exhibit E); (5) Baker screamed at a student's grandmother and told her that she had "had it with her" and that she was not a babysitter (Id. at 114); As a result of these complaints, Mosley believed that Baker had a problem controlling her temper, had an anger problem, and he had concerns about Baker's classroom management. (Id. at 116; 117; 124). At that time, Mosley had concerns about the allegations of Baker threatening to use physical

Baker after receiving numerous reports from students, parents, and/or staff members of conduct by Baker which Mosley felt was inappropriate and which displayed a serious problem with anger management summary judgment is not appropriate. Furthermore, Defendant Mosley has failed to point to any evidence in the record which would pierce the Plaintiffs' pleading and which would afford him summary judgment relief. For this reason, in addition to the evidence provided by Plaintiffs in response to Defendant Mosley's Motion, Plaintiffs respectfully request that this Court deny Defendant Mosley's Motion for Summary Judgment.

This 18th day of May, 2006.

CLAXTON & CLAXTON, LLC

_____
WILLIAM P. CLAXTON
Georgia State Bar No. 129320

_____
DARCY S. DUVAL
Georgia State Bar No. 236051
Attorneys for Plaintiffs

Suite 115
180 Interstate North Parkway
Atlanta, Georgia 30339
770.933.1946
770.933.8455 (Fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WENDY PETERSON, Individually and As Next Friend of JONATHON PETERSON, a minor<br><br>Plaintiffs,<br><br>v.<br><br>AMBER BAKER, EDDIE MOSLEY, TRUDY SOWAR, PAULDING COUNTY BOARD OF EDUCATION and PAULDING COUNTY SCHOOL DISTRICT,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:  CIVIL ACTION FILE<br>:  NO. 1:04 -CV- 3308-GET<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **CERTIFICATION UNDER L.R. 7.1(D)**

I hereby certify pursuant to Northern District of Georgia Local Rule 7.1(D) that the above and forgoing **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT EDDIE MOSLEY'S MOTION FOR SUMMARY JUDGMENT** is prepared in Times New Roman 14 point font in accordance with Local Rule 5.1(B).

This 18th day of May, 2006.

CLAXTON & CLAXTON, LLC

_____
DARCY S. DUVAL
Georgia State Bar No. 236051
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| WENDY PETERSON, Individually and As Next Friend of JONATHON PETERSON, a minor<br><br>Plaintiffs,<br><br>v.<br><br>AMBER BAKER, EDDIE MOSLEY, TRUDY SOWAR, PAULDING COUNTY BOARD OF EDUCATION and PAULDING COUNTY SCHOOL DISTRICT,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACTION FILE<br>: NO. 1:04-CV-3308-GET<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CERTIFICATE OF SERVICE

This is certify that I have this day electronically filed and served a copy of the **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT EDDIE MOSLEY'S MOTION FOR SUMMARY JUDGMENT** upon all parties with the Clerk of Court using the CM/ECF system which will automatically send e mail notification to the following attorneys:

William Thomas Cable, Esq.
367 West Memorial Drive
Dallas, GA 30132

Roger Sumrall, Esq.
Cynthia Daley, Esq.
Hall, Booth, Smith & Slover
1180 West Peachtree Street, N.W.
Suite 900
Atlanta, GA 30309

This 18th day of May, 2006.

_____
DARCY S. DUVAL
Georgia Bar No.: 236051