IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

WENDY PETERSON, individually
and as next friend of Jonathon
Peterson, a minor,

        Plaintiff,

v.

AMBER BAKER; EDDIE MOSELY;
TRUDY SOWAR; PAULDING COUNTY
BOARD OF EDUCATION; PAULDING
COUNTY SCHOOL DISTRICT,

        Defendants.

**OCT 2 6 2006**

JAMES N. HATTEN, Clerk
By: ⟨signature⟩
        Deputy Clerk

CIVIL ACTION
NO. 1:04-cv-3308-GET

O R D E R

The above-styled matter is presently before the court on:

(1) defendant Paulding County School District's motion for summary judgment [docket no. 87];

(2) defendant Trudy Sowar's motion for summary judgment [docket no. 88];

(3) defendant Eddie Mosely's motion for summary judgment [docket no. 89];

(4) defendant Paulding County Board of Education's motion for summary judgment [docket no. 90];

(5) defendant Amber Baker's motion for summary judgment [docket no. 93];

(6) defendant Amber Baker's motion for leave to file corrected motion for summary judgment [docket no. 94];

(7) defendant Amber Baker's corrected motion for summary judgment [docket no. 95].

## Background

Plaintiff filed this action against defendants alleging that defendant Baker administered corporal punishment on plaintiff's son, Jonathon, while he was a student in Baker's class at Herschel Jones Middle School in the Paulding County School District ("School District"). Defendant Sowar's is the Superintendent of the School District. Defendant Mosely was the principal of Herschel Jones Middle School. The Paulding County Board of Education ("Board of Education") is also a defendant.

Plaintiff asserts the following claims: (1) Count I - violation of substantive due process rights under the 14th Amendment pursuant to 42 U.S.C. § 1983 against Baker; (2) Count II - failure to train, instruct and supervise which resulted in a violation of substantive due process rights against the School District, the Board of Education, Mosely and Sowars (collectively, the "Paulding County defendants"); (3) Count III - attorney's fees and expenses pursuant to § 1983; (4) Count IV - battery pursuant to O.C.G.A. § 51-1-14 against Baker, (4) Count V - punitive damages against Baker; (6) Count VI - punitive damages against the Paulding County defendants; (7) Count VII - attorney's fees against Baker pursuant to O.C.G.A. § 13-6-11; (8) Count VIII - attorneys' fees against the Paulding County defendants pursuant to O.C.G.A. § 13-6-11; (9)

Page 2

Count IX- intentional infliction of emotional distress against Baker; (10) Count X - respondeat superior pursuant to O.C.G.A. §§ 51-2-1(a) and 51-2-2 against the Paulding County defendants; (11) Count XI - expenses for counseling against all defendants; (12) Count XII - negligent failure to train, instruct, supervise and retain against Paulding County defendants; (13) Count XIV (sic) - physical pain and discomfort against all defendants; (14) Count XV - emotional and mental pain against all defendants; (16) Count XVI- emotional and mental pain against all defendants; (17) Count XVII - future emotional and mental pain against all defendants.

All defendants filed motions for summary judgment. Plaintiff objects to the motions for summary judgment filed by the Paulding County defendants because the motions did not attach a statement of undisputed material facts. Having read and considered those defendants' motions, it appears that those defendants are relying on legal arguments to support their motions for summary judgment and do not dispute the material facts as alleged by plaintiff. Therefore, the court will consider their motions for summary judgment. To the extent any factual basis is asserted or relied upon by the Paulding County, the court will not consider any fact presented by defendants to the extent that it conflicts with the factual arguments presented by plaintiff.

Defendant Baker has moved for leave to withdraw her original motion for summary judgment and to file a corrected motion for

summary judgment to include the case caption.  No objection to this motion has been filed. Therefore, defendant Baker's motion for leave to file a corrected motion and withdraw her original motion [docket no. 94] is GRANTED.  Defendant Baker's original motion for summary judgment [docket no. 93] is WITHDRAWN and MOOT. The court will consider defendant Baker's corrected motion for summary judgment [docket no. 95].

<u>Standard</u>

Courts should grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  That burden is 'discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325; <u>see</u> <u>also</u> <u>U.S. v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991).

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of

material fact. <u>Celotex</u>, 477 U.S. at 325. The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in his favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. <u>Id.</u> at 255; <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1529 (11th Cir. 1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." <u>Anderson</u>, 477 U.S. at 249-50. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. <u>Id.</u> at 248. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element. <u>Celotex</u>, 477 U.S. at 323.

<u>Facts</u>

In light of the foregoing standard, the court finds the following facts for the purpose of resolving these motions for summary judgment only.   Defendant Baker graduated from Spelman College in Atlanta, Georgia in 2003 with a degree in English. Following graduation, she attended a job fair for teachers and submitted an application to the Paulding County School system for a teaching position.   Baker intended to teach under the Teach for Georgia program which allows people with four-year degrees to begin teaching without a teaching certificate and participate in an on-the-job training program to obtain their certificate.   Paulding County School District offered Baker a position teaching remedial reading at Herschel Jones Middle School approximately one week before the students reported for the School year.

Defendant Mosely was the principal at Herschel Jones Middle School.   Defendant Sowars was the Superintendent of the Paulding County School District.

In a memo of concern written by Mosely to Baker at the end of the first week of School, Mosely identifies three concerns based upon reports from parents of students in Baker's classes.   The first concern was Baker's requirement that the students purchase a book, which violates school policy.   Once Baker was informed of this policy, there is no evidence that she made this request of students again.   The second concern was a complaint that a student

Page 6

had been required to stand with his finger on his nose because of misbehavior in Baker's classroom. The student's parents also complained to Mosely that Baker had called their home and discussed their son's situation with his fifteen year old sister. The third concern was that Baker had punished several tardy students by requiring them to write sentences about making excuses.

In September, Mosely prepared a second Memorandum of Concern regarding Baker's teaching performance. First, Mosely cited Baker's failure to attend Student Support Team (SST) meetings. The second concern was Baker's failure to provide her communication logs memorializing contact with the parents of her students. The third concern was Baker's failure to create and maintain an appropriate classroom atmosphere. For example, Baker would make an inappropriate comment to one student, several students would report the comment to their parents and those parents would contact Mosely regarding the behavior. Baker also had physically placed her face close to students' faces and made disparaging comments to them.

On October 7, 2003, Baker kicked her door shut as she entered the hallway causing the glass to break. While there were some reports that this was done in anger, Baker claims that it was an accident and that she closed the door with her foot because her hands were full of books. Based on his investigation, however, Mosely stated that it "was apparent" to him that Baker lost her temper.

Mosley asked an instructional lead teacher to work with Baker and observe her in class.  Mosely also asked Baker's "TAPP" mentor to observe Baker in the classroom.  Formal reports of any observations that took place were not created.  The first recorded formal observation was on November 24, 2003.

In a Memorandum of Concern dated October 17, 2003, Mosely advised Baker that a student's parent had complained that Baker had threatened to hit her son with a marker.  Mosely also had a complaint from the grandmother of one of Baker's students that Baker had told the grandmother that she had "had it with" her granddaughter and was not a babysitter.  A parent also reported that Baker had hit a child over the head with a book on October 10, 2003.  School District employees Dr. McCown and Cliff Cole were also notified of these reported incidents.  Baker, however, claims she did not receive the Memorandums of Concern.

Jonathon Peterson, a fourteen year old male student, was assigned to defendant Baker's Fifth Period Remedial Reading Class. On February 5, 2004, Jonathon, along with classmate Willie Landers, arrived to Baker's class well into the class period.  Landers was upset about an incident with another student and he and Jonathon were talking in class.  Baker asked Landers to step outside the classroom.  Jonathan contends that Baker also told him to step outside but Baker asserts that this was a misunderstanding on Jonathon's part.

Jonathon attempted to leave the classroom with Landers. Baker told Jonathon to sit back down but he refused "because [he] wanted to leave." Baker yelled at Jonathon and shook her finger in his face. When Jonathon continued to move toward the classroom door, Baker placed her left arm across the door frame and instructed Jonathon to take his seat. Jonathon again refused to be seated.

Baker claims that Jonathon pushed her and that she stumbled back. She also claims that he pushed or knocked her hand and arm from the door frame. Jonathon denies pushing Baker but admits that he "moved her hand off the door....I put one hand on her hand and just pushed it down - not hard, just pushed it down."

Baker then grabbed Jonathon in the neck area. Jonathon claims that she "was squeezing [his] neck to where [he] was starting to not be able to breathe." According to Baker, she was afraid that Jonathon was going to strike her and she was trying to keep him from assaulting her again. After Jonathon pushed his way out of the classroom, he turned back to Baker, cursing her and telling her not to ever put her hands on him again.

Jonathon, after detouring around the outside of the building, went to the office to report the incident. Baker also made a written report of the incident.

According to Jonathon, he was not suffering any pain when he arrived at the office. When plaintiff arrived at the school, she found Jonathon unsupervised in the gym. After Jonathon told

plaintiff his version of the events with Baker, plaintiff took Jonathon to the local police department and reported the incident.

Jonathon initially was told that he would have to serve ten days of In School Suspension and ten days of Out of School Suspension.   However, he was never required to serve these suspensions.   Baker was placed on administrative leave while the school investigated the incident with Jonathon.   She resigned from the Paulding County School District on February 27, 2004.

Discussion

**Baker's Motion for Summary Judgment**

Defendant Baker moves for summary judgment on the grounds that she is entitled to qualified immunity for plaintiff's § 1983 claims and official immunity for plaintiff's state law claims.   Baker also moves for summary judgment on plaintiff's claims for punitive damages under state and federal law.

The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992)(quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665 (1986))(stating substantive due process guarantee protects against government power arbitrarily and oppressively exercised). "[T]he substantive component of the Due Process Clause is violated by [state conduct] only when it 'can properly be characterized as

arbitrary, or conscience shocking, in a constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717 (1998)(citations omitted). The concept of conscience-shocking duplicates no traditional category of common law fault, but "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." Id.  The due process guarantee does not impose liability whenever someone cloaked with state authority causes harm. Id. "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849, 118 S. Ct. at 1718. "[C]orporal punishment in public schools implicates a constitutionally protected liberty interest." Ingraham v. Wright, 430 U.S. 651, 672, 97 S. Ct. 1401, 1413 (1977). "[W]here school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain," Fourteenth Amendment liberty interests are implicated. Id. at 674, 97 S. Ct. at 1414. "[T]here can be no deprivation of substantive rights as long as disciplinary corporal punishment is within the limits of the common-law privilege [to use reasonable force in disciplining children]." Id. at 676, 97 S. Ct. at 1415 (deciding state law remedies are adequate to protect against deprivations without procedural due process).

"[E]xcessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment..., may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." Neal v. Fulton County Bd of Ed., 229 F.3d 1069, 1075 (11th Cir. 2000). At a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury. Id. See London v. Directors of DeWitt Public Schools, 194 F.3d 873, 876-77 (8th Cir. 1999); Saylor v. Bd of Ed. of Harlan Cty, 118 F.3d 507, 514 (6th Cir. 1997); P.B. v. Koch, 96 F.3d 1298, 1304 (9th Cir. 1996); Metzger v. Osbeck, 841 F.2d 518 (3rd Cir. 1988); Garcia v. Miera, 817 F.2d 650655 (10th Cir. 1987); Hall v. Tawny, 621 F.2d 607, 613 (4th Cir. 1980). "The punishment must objectively be obviously excessive and the teacher must subjectively intend to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." Neal, 229 F.3d at 1075, n.3.

In determining whether the amount of force used is obviously excessive, the court considers the totality of the circumstances. In particular, the court examines: (1) the need for the application of corporal punishment, (2) the relationship between the need and

amount of punishment administered, and (3) the extent of the injury inflicted.  Id. citing Metzger, 841 F.2d at 520 ("[i]n determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.").  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [person's] constitutional rights."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)(addressing prison guard's use of force to discipline an inmate).

It is undisputed that plaintiff's son initiated the physical contact with defendant Baker.  Furthermore, there is no evidence, other than plaintiff's speculative assertion, to dispute that defendant Baker perceived this contact as an assault, prompting Baker to react in self-defense.  Even assuming Baker's act of placing her hand on Jonathon's neck and squeezing was an act of corporal punishment for his refusal to take his seat, however, the action does not rise to the level of a substantive due process violation.  Any injury to plaintiff's son was de minimus as he testified that the pain had subsided by the time he reached the principal's office and there is no evidence that any medical

treatment for physical injuries was required. See e.g. London, 194 F.2d 873 (8th Cir. 1999)(no substantive due process claim where teacher dragged student across floor and banged his head against pole where injury minimal).   Cf. Neal (finding substantive due process violation alleged where student incurred serious injury when teacher allegedly hit him with a metal weight lock and knocked his eye out of the socket).   Furthermore, the admissible evidence does not support a finding that defendant Baker acted wilfully or maliciously with an intent to injure Jonathon.  Rather, the evidence tends to support a finding that Jonathon could have backed off at any time prior to his initiation of contact with Baker and avoided any physical contact with her merely by returning to his seat as instructed.

Likewise, the court finds that Baker is entitled to qualified immunity for her actions.  In order to establish qualified immunity, a  government  official  must  first  prove  that  the  allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority.  If the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law.  Harbert Int'l, Inc. v. James, 157 F. 3d 1271, 1281 (11th Cir. 1998).

It is undisputed that defendant Baker was exercising her discretionary authority at the time of the incident.  In order to find that the law was clearly established to the point that

qualified immunity does not protect the government official, "previous law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." Delgado v. Miami-Dade Cty, 2006 WL 2965982 (S.D. Fla. 2006).   To make this showing, plaintiff must point to law as interpreted by the United States Supreme Court or the Eleventh Circuit Court of Appeals. Mercado v. Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).   The Supreme Court, however, in evaluating an Eighth Amendment violation, has rejected a requirement that the facts be "fundamentally similar," emphasizing that the "salient question" is whether the state of the law gave fair warning that the punishment was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002)(plaintiff stated substantive due process violation where chained to hitching post by prison guards).   Plaintiff argues, therefore, that because other courts have previously found that choking students results in a constitutional violation, defendant should have been aware that she was violating plaintiff's rights. See e.g. P.B. v. Koch, 96 F.3d 1298 (9th Cir. 1996)(no qualified immunity for principal who grabbed student's neck and squeezed after hearing him say "Heil Hitler" and initiated physical contact with other students intentionally punching, slapping, grabbing and slamming student into lockers); Metzger v. Osbeck, 841 F.2d 518 (3rd Cir. 1988)(teacher grabbed student around neck causing student to lose consciousness resulting

Page 15

in a broken nose, lacerated lip and fractured teeth may violate right to bodily integrity). These cases, however, are distinguishable from the circumstances presented in this case. In the instant action, plaintiff's son did not suffer any severe injury. He almost immediately thereafter left the classroom and was able to yell at Ms. Baker from the hallway. Furthermore, Baker's conduct occurred only after plaintiff's son initiated physical contact with Baker and Baker perceived this contact as an assault. As the cases cited by plaintiff involved conduct much more egregious than that of defendant Baker and injuries more severe than those of Jonathon, the court concludes that the law was not sufficiently established that a teacher who briefly chokes a student who refuses to obey the teacher's instruction to return to his seat after that student has made the initial physical contact between teacher and student and the student does not suffer any serious injury would constitute a violation of the student's substantive due process rights.

Defendant also argues that she is entitled to official immunity on plaintiff's state law claims. Under Georgia law, a government official or employee is entitled to official immunity in her individual capacity for performing discretionary acts without actual malice or intent to cause harm. Gilbert v. Richardson, 264 Ga. 744, 753 (1994). "'In general, a malicious act involves all that is usually understood by the term 'wilful' and is further marked by

either hatred or ill will or by such utter recklessness and disregard of the rights of others as denotes a corrupt or malevolent disposition.'"   Harvey v. Nichols, 260 Ga. App. 187, 192 (2003)(quoting Partain v. Maddox, 131 Ga. App. 778, 783-84 (1974)). When an official commits an act of battery in self-defense, she is justified in acting and remains entitled to official immunity. See Kidd v. Coates, 271 Ga. 33, 33 (1999).

It is undisputed that Baker was performing a discretionary act. Plaintiff argues, however, that a question of fact exists as to whether defendant was acting in self defense.  Plaintiff invites the court to ignore defendant's affidavit in this regard as her "credibility is questionable."  Plaintiff, furthermore, cites to previous incidents where defendant Baker expressed dislike or disdain for plaintiff's son, as well as  defendant Mosely's report of the incident (Exhibit A), in which plaintiff's son asserts that defendant Baker yelled at him and told him that "she 'hated him and didn't want him in her room in the first place.'"   It is not entirely clear that this evidence would be admissible at trial nor that it is competent summary judgment evidence.  See Fed. R. Evid. 404(b) (regarding character evidence and other wrongs or acts) and Fed. R. Evid. 802, 803 (regarding hearsay).   In any event, the evidence cited by plaintiff does not support plaintiff's contention that defendant Baker attacked plaintiff's son out of malice. Although defendant may have yelled at Jonathon, she did not actually

touch him until after he initiated physical contact with her. Furthermore, the undisputed evidence provides that Baker perceived this contact as an assault. Therefore, defendant is entitled to official immunity on plaintiff's state law claims. Likewise, for the foregoing reasons, plaintiff's claims for punitive damages also must fail. Accordingly, defendant Baker's corrected motion for summary judgment [docket no. 95] is GRANTED.

**Paulding County Defendants**

All of the Paulding County defendants move for summary judgment on all of plaintiff's claims against them. As all of plaintiff's claims stem from the actions of defendant Baker and this court has determined that Defendant Baker is entitled to summary judgment, the court finds that the Paulding County defendants likewise are entitled to summary judgment on all of plaintiff's claims. The court, however, will address the legal arguments of each defendant below.

**Paulding County School District**

Defendant Paulding County School District moves for summary judgment on the ground that the School District did not act with such deliberate indifference to the known or obvious consequences of Defendant Baker's conduct as to constitute a sanction of such behavior. See Davis v. DeKalb County School District, 233 F.3d 1367, 1375 (11th Cir. 2000). Furthermore, defendant School District

moves for summary judgment on the state law claims based on sovereign immunity.

A plaintiff seeking to impose liability on a municipality (school district) under section 1983 must identify a municipal policy or custom that caused a deprivation of federal rights. Board of County Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997). It is well established that a municipality may not be held liable under section 1983 on a theory of respondeat superior. See Monell v. Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 2036 (1978). Instead, recovery from a municipality is limited to acts that are, properly speaking, acts of the municipality - that is, acts which the municipality has officially sanctioned or ordered. Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1298 (1986). Moreover, it is not enough to identify conduct properly attributable to the municipality. A plaintiff must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences. Brown, 520 U.S. at 407, 117 S. Ct. at 1390 (quoting City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, (1989)).

Plaintiff contends that defendant School District was on notice of defendant Baker's violent conduct and anger management issues but failed to remove her from the classroom. It is undisputed, however,

Page 19

that defendant Mosely reprimanded Baker for her earlier conduct and referred her for observation and mentoring. Furthermore, none of the allegations against Baker were so egregious as to put defendant on notice that Baker was a danger to the students in the classroom. Therefore, the court finds that plaintiff fails to establish deliberate indifference on the part of the defendant School District.

With regard to plaintiff's state law claims, school districts in Georgia are vested with sovereign immunity such that tort liability does not attach unless such immunity has been waived. Ga. Const. Art. IX, § 2,¶ 9; Davis, 996 F. Supp. 1478, 1484, aff'd, 233 F.3d 1367 (11th Cir. 2000). The School District has not waived its sovereign immunity. See e.g. O.C.G.A. § 50-21-22. Therefore it is not subject to suit on plaintiff's state law claims.

Accordingly, defendant Paulding County School District's motion for summary judgment [docket no. 87] is GRANTED.

## Defendant Paulding County Board of Education's motion for summary judgment

In Georgia, a county board of education generally lacks capacity to be sued. Cook v. Colquitt County Board of Education, 261 Ga. 841, 841 (1992). A county board of education, unlike the school district which it manages, "is not a body corporate and does not have the capacity to sue or be sued." Id.; see Fann v. Johnson County Board of Education, 270 Ga App. 186, 187 (2004); Brown v. Penland Construction Company, Inc., 276 Ga. App. 522, 525 (2005).

Plaintiff fails to point the court to any evidence which would support a finding that any exception to this rule applies in this case. See eq. Cook, 261 Ga. at 828 (exception where local school board created by state legislature in an act specifically giving school board capacity to be sued).

Accordingly, defendant Paulding County Board of Education's motion for summary judgment [docket no. 90] is GRANTED.

**Defendant Trudy Sowar's motion for summary judgment**

Plaintiff's §1983 claim against Defendant Sowar, the Superintendent of the Paulding County School District, rests on a theory of supervisory liability. Supervisory liability can be found when either the supervisor actually participates in the alleged constitutional violation or "when there is a causal connection between the actions of the supervisory official and the alleged constitutional deprivations." Melvin Hackett v. Fulton County School District, 238 F. Supp. 2d 1330, 1359 (N.D. Ga. 2002). "If the individual whom a plaintiff is seeking to hold liable under a theory of supervisory liability was not present at the time that the alleged constitutional violation occurred, the standard to impose liability is 'extremely rigorous.'" Id. (quoting Braddy v. Florida Dept. of Labor & Emp., 133 F.3d 797, 802 (11th Cir. 1998)). "The deprivations that constitute widespread abuse sufficient to notify the supervisory official must be obvious, flagrant, rampant and of

such continuous duration rather than isolated occurrences."    Id. (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

There is no evidence that defendant Sowar actively participated in the actions causing injury to Jonathan.   Therefore, plaintiff must prove a causal connection between defendant Sowar's actions and the constitutional deprivations alleged by Jonathan.   Plaintiff must show that the supervisor employed an improper custom or policy which resulted in deliberate indifference to the potential harm to plaintiff's son.    Hartley, 193 F.3d at 1269.   This is the same standard that applies to school districts in deciding 1983 violations.   Sauls v. Pierce County School District, 399 F.3d 1279, 1287 (11th Cir. 2005).

Plaintiff points to no evidence that Sowars was aware of the complaints against Baker prior to the incident with Jonathan. Likewise, plaintiff cites to no action taken nor policy established by Sowars which caused Jonathan's alleged injuries.

Plaintiff attempts to hold Sowars accountable for the actions of Dr. William McCown who plaintiff asserts is responsible for dealing with teacher personnel issues.   A county governing body may be held liable for acts or policies of individuals to whom it delegates final decision making authority in a particular area. Matthews v. Columbia Cty, 294 F.3d 1294, 1297 (11t Cir. 2002)("local government liability can exist when someone with final policymaking authority delegates that authority to someone else.   But, the

delegation must be such that the decision is not subject to review by the policymaking authority").

The evidence relied upon by plaintiff fails to establish that either Mosely or McCown had final policymaking authority such that their actions can be attributable to either the School District or defendant Sowars.  Therefore, plaintiff fails to establish supervisory liability against defendant Sowars for the § 1983 claims.

Defendant asserts that she is entitled to qualified official immunity for plaintiff's state law claims against her.  Plaintiff fails to cite the court to any evidence that Sowars acted with malice in performing her discretionary duties and plaintiff does not allege that Sowar was merely performing a ministerial act. Therefore, defendant Sowars is entitled to official immunity.

In light of the foregoing, defendant Sowar's motion for summary judgment [docket no. 88] is GRANTED.

**Defendant Mosely's Motion for summary judgment**

It is undisputed that defendant Mosely did not personally participate in any of the actions causing injury to Jonathan. Therefore, plaintiff must establish a causal connection between the actions of defendant Mosely and the alleged constitutional deprivations.  See Brown, 906 F.2d at 671.

Plaintiff argues that Mosely ignored warnings about defendant Baker's violent conduct, indicating Mosely's deliberate

indifference.   Several of the complaints cited by plaintiff, such as defendant Baker's failure to attend SST meetings or her request that students buy a book for class, present no concern for the safety of the students.   Likewise, complaints that Baker had employed "bizarre punishments" such as having a student stand with his finger on his nose or requiring students to write sentences about making excuses, while deemed inappropriate by Mosely, do not raise a question as to potential physical harm to the students by Baker.   Even the complaints against Baker that she made inappropriate comments to students, calling them "stupid" and telling them to "shut your chubby cheeks," do not raise a concern that Baker would physically injure a student.

Three incidents cited by plaintiff involve allegations that might relate to the physical safety of students.   In the first incident, defendant Baker allegedly threatened to hit a student in the head with a marker.   In the second incident, Baker hit a student on the head with a book.   In the third incident, Baker kicked a door shut causing the glass window in the door to break.

None of these incidents rise to the level of creating an unsafe classroom.   Plaintiff points to no evidence indicating that any student was injured in any of these incidents.   In any event, defendant Mosely prepared Memorandums of Concern addressing these actions by defendant Baker and reprimanding her.   The court finds that plaintiff fails to present sufficient evidence to create a

Page 24

question of fact as to defendant Mosely's deliberate indifference to the potential harm such that a causal connection between Mosely's actions and the alleged constitutional violation exists.

With regard to plaintiff's state law claims, defendant Mosely is entitled to qualified official immunity for state law claims against him if the actions that give rise to the alleged violations were discretionary and performed without malice. <u>Hackett</u>, 238 F. Supp.2d at 1368. In the instant action, defendant Mosely's acts were clearly discretionary. Furthermore, plaintiff points to no evidence which would indicate that Mosely had any intention of causing harm to Jonathon or otherwise acted with malice. Therefore, Mosely's motion for summary judgment [docket no. 89] is GRANTED.

### Summary

(1) Defendant Paulding County School District's motion for summary judgment [docket no. 87] is **GRANTED**;

(2) Defendant Trudy Sowar's motion for summary judgment [docket no. 88] is **GRANTED**;

(3) Defendant Eddie Mosely's motion for summary judgment [docket no. 89] is **GRANTED**;

(4) Defendant Paulding County Board of Education's motion for summary judgment [docket no. 90] is **GRANTED**;

(5) Defendant Amber Baker's motion for summary judgment [docket no. 93] is **WITHDRAWN** and **MOOT**;

(6) Defendant Amber Baker's motion for leave to file corrected motion for summary judgment [docket no. 94] is **GRANTED;**

(7) Defendant Amber Baker's corrected motion for summary judgment [docket no. 95] is **GRANTED.**

**SO ORDERED**, this **26** day of October, 2006.

_____
G. ERNEST TIDWELL, JUDGE
UNITED STATES DISTRICT JUDGE

Page 26